Raymond ALLEN, Peter Bosman, Carol E. Bunn, Karl C. Kaiser, on behalf of themselves and on behalf of others similarly situated, Plaintiffs,

v.

MARSHALL FIELD & COMPANY, Defendant.

No. 81 C 5811.

United States District Court, N. D. Illinois, E. D.

Jan. 27, 1982.

Charles J. Barnhill, George F. Galland, Jr., Davis, Miner, Barnhill & Galland, Ltd., Chicago, Ill., for plaintiffs.

David A. Maddux and David S. Bradshaw, Los Angeles, Cal., Sheppard, Mullin, Richter & Hampton, San Francisco, Cal., Donald G. Kempf, Jr. and Roger L. Taylor, Kirkland & Ellis, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

Four former employees of Marshall Field & Company (Marshall Field), have filed this "statutory class action" against their former employer pursuant to the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–34. They allege that since January 1, 1977, when Angelo Arena became president of Marshall Field, the defendant has maintained a policy of discharging or demoting its older management-level employees for fictitious reasons, or forcing them into early retirement by placing or threatening to place them in lower paying or dead-end jobs. They seek authorization to send notice of this action to all current and former executives in Marshall Field's Chicago Division who have been adversely affected through discharge, demotion, transfer, or early retirement since January 1, 1977.[1] Marshall Field opposes giving any such notice, and, in the alternative, suggests various ways in which the plaintiffs' proposed notice should be circumscribed.[2] The defendant also requests that we certify for interlocutory appeal under 28 U.S.C. § 1292(b) any decision which permits the plaintiffs to send notice of this action to other potential claimants.

For the reasons stated below, we grant the plaintiffs' motion to send notice of this action to other members of the class. We also adopt the plaintiffs' proposed notice with modifications and we direct Marshall Field to provide the information necessary to send this notice in an orderly and expeditious manner. Finally, we deny the defendants' motion for certification under section 1292(b).

### I.

Although the prohibitions of the ADEA were taken from Title VII, the

---

1. Originally, the plaintiffs requested that notice be sent to all of the defendant's current and former management-level employees who *might* have been adversely affected by these employment decisions, regardless of whether or not they worked in the defendant's Chicago Division. They accept, however, Marshall Fields' suggestion that notice be limited to current and former executives in its Chicago Division who were adversely affected in the ways indicated.

2. Both the plaintiffs and Marshall Field have submitted proposed notices. We attached the plaintiffs' proposed notice to this opinion as Appendix A, and the defendant's proposed notice as Appendix B.

ADEA incorporates the enforcement procedures of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b). Thus, the better known and more frequently used class action procedures of Rule 23, Federal Rules of Civil Procedure, are not applicable to class actions brought to enforce rights under the ADEA. *Locascio v. Teletype Corporation*, 74 F.R.D. 108 (N.D.Ill.1977). Instead, § 216(b) provides, in pertinent part:

> [a]n action [to pursue claims under the ADEA or the FLSA] . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

In contrast to a class action under Rule 23—where, in general, once the class is certified class members are parties to the action unless they affirmatively "opt-out" of the action—class members who are not named in the complaint brought under § 216(b) do not become parties to the action unless they affirmatively "opt-in" by filing their written consent-to-join with the court. *Kinney Shoe Corporation v. Vorhes*, 564 F.2d 859 (9th Cir. 1977).

Rule 23 contains two notice provisions, one requiring notice in (b)(3) actions and another permitting notice, at the court's discretion, in other actions brought under Rule 23. Indeed, a court may limit communications between parties and potential class members in a Rule 23 class action only upon "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 S.Ct. 2193, 2200, 68 L.Ed.2d 693 (1981). However, 216(b) contains no provision which either prohibits, permits or requires sending notice

to potential claimants. Neither the Supreme Court nor the Seventh Circuit has addressed the question whether a court may authorize notice to class members who have a right to opt-in to a § 216(b) action.

The defendant relies primarily upon *Kinney Shoe, supra*. *Kinney Shoe* affirmed the district court's denial of a request to compel the defendant to provide the names and addresses of potential class members in a § 216(b) action, and to permit circulation of a notice of the action to them.[3] The court reasoned that the due process considerations which necessitate notice in Rule 23 class actions are not present in actions brought pursuant to § 216(b). 564 F.2d at 863. Notice is provided to class members in Rule 23 actions not to inform them that their rights may have been violated and that redress is available in the courts, but to give them the opportunity to opt-out of an action whose disposition will otherwise bind them. *Id*. Because a judgment in an action under § 216(b) which favors the defendants binds only those who have specifically opted-in, no due process interest requires giving notice to potential claimants. *Id*.

Marshall Field also argues that the legislative history of an amendment, in 1947, to § 216(b), and of the ADEA, supports its argument that the absence in § 216(b) of a provision for notice to potential claimants—in contrast to the explicit provisions for notice in Rule 23—should be interpreted as prohibiting rather than permitting a court to authorize notice to other class members. However, what little legislative history there is concerning § 216(b) sheds no light on whether Congress intended the absence of any notice provision in that statute to prohibit notice. All that is clear from that legislative history is that Congress amended § 216(b) to curtail the proliferation of suits brought against employers under the substantive provisions of the FLSA, following the Supreme Court's expansion of the definition of "working time," for purposes of the FLSA, in *Anderson v. Mt. Clemens Pot-*

---

**3.** The Ninth Circuit recently reaffirmed its decision in *Kinney Shoe* in *Partlow v. Jewish Or-* *phans' Home of Southern California*, 645 F.2d 757 (1981).

*tery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). *See generally* [1947] U.S.Code Cong. & Ad.News 1029–36.

 Similarly, the legislative history of the ADEA makes clear Congress' intention that the ADEA be enforced through procedures available under the FLSA rather than through procedures available for Title VII claims. *Hearings before the General Subcommittee on Labor of the House Committee on Education and Labor on H.R. 3651, H.R. 3768, and H.R. 4221,* 90th Cong., 1st Sess. (1967) [hereinafter ADEA Hearings]. Nonetheless, the legislative history of the ADEA does not clarify the procedures available in class actions brought under § 216(b) to enforce the substantive rights of the ADEA and the FLSA.[4]

 While we agree with the Ninth Circuit that due process does not require notice in § 216(b) class actions, we find persuasive the reasoning of cases which interpret the absence of a notice provision in § 216(b) as permitting notice "in an appropriate case." *Braunstein v. Eastern Photographic Laboratories, Inc.,* 600 F.2d 335, 336 (2d Cir. 1978). Allowing notice to be sent to potential claimants serves "the broad remedial purpose" of the ADEA and is likely to prevent a multiplicity of suits. *Id.* It would be anomalous for Congress to provide

a class action remedy, and, at the same time require that a class action's existence be hidden from potential class members. *Monroe v. United Air Lines, Inc.,* 90 F.R.D. 638, 640 (N.D.Ill.1981); *Riojas v. Seal Produce, Inc.,* 82 F.R.D 613, 619 (S.D.Tex.1979). Moreover, as Judge Shadur noted in *Monroe,* judicial supervision and authorization of the notice to potential class members assures them of "a neutral discussion" of the nature of an ADEA class action, and their right to participate in that action. 90 F.R.D. at 640. We therefore agree with the plaintiffs that § 216(b) permits us to authorize notice to potential class members in an appropriate case.

II.

Marshall Field contends, however, that this action is not an "appropriate" one for notice. It argues that, because the current plaintiffs occupied varying positions in its corporate hierarchy, worked in different stores in various geographic locations, and allege discriminatory actions occurring on "vastly varying dates," they do not meet the requirement of § 216(b) that party plaintiffs be "similarly situated." Marshall Field contends, and it is logical to believe, that claimants who opt-in to this action in

4. Marshall Field infers from statements at the ADEA hearings that Congress viewed age discrimination as qualitatively different from other kinds of discrimination prohibited by Title VII. At the hearings, Representative James Burke of Massachusetts stated:

Age discrimination is not the same as the insidious discrimination based on race or creed prejudices or bigotry. Racial or religious discrimination results in nonemployment because of feelings about a person entirely unrelated to his ability to do a job. This is hardly a problem for the older job seeker.

ADEA Hearings at 449. Similarly, Representative John H. Dent of Pennsylvania, then Chairman of the House Subcommittee on Labor, stated at the hearings:

[T]his member of this committee does not want this legislation to be combined with any of the existing anti-discrimination programs which are of a different nature. I don't want it confused with any other kind of discrimination. It is distinct and separate discrimination and should be recognized as such.

*Id.* at 97. Neither Representative Dent nor Representative Burke explained why age discrimination is distinct from or less invidious than the forms of discrimination prohibited by Title VII. "Any illegal discrimination in employment implies that an employer based hiring and firing decisions on factors unrelated to the worker's ability to do a particular job." Note, *The Class Action Suit under the Age Discrimination in Employment Act: Current Status, Controversies, and Suggested Clarifications,* 32 Hastings L.J. 1377, 1378 n.7 (1981). Given the conclusory statements of Representatives Burke and Dent, the inference that "Congress viewed age discrimination as a unique form of employment discrimination," *Naton v. Bank of California,* 72 F.R.D. 550, 554–55 (N.D.Cal. 1976), is a reasonable one. However, it does not follow that the reasons, if any, for these statements are compelling. Nor does it follow from these statements, even if we accept them as expressing the intent of the Congress which passed the ADEA, that Congress intended to prohibit notice to other class members of ADEA actions brought under § 216(b).

response to a notice of it may broaden these supposedly diverse characteristics of the class. Furthermore, the defendant argues that notification of potential claimants will result in a class composed of both former employees (alleging discriminatory discharges or forced early retirement) and current employees (alleging discriminatory demotions or transfers). This, it argues, would create the possibility of a conflict of interest among the plaintiffs.

The plaintiffs in a § 216(b) class action, however, need not show that their positions are identical, but only that they are similar. *Riojas*, 82 F.R.D. at 616. The named plaintiffs in this case have alleged a campaign of discrimination by Marshall Field, which transcends minor differences in their levels of management responsibility, geographic location, and dates of alleged discriminatory actions. We agree with the plaintiffs that the focus of a trial in this case will be the allegation that the defendant orchestrated a "campaign to rid [itself] of its older employees because of their age." Differences in the particular adverse consequences (of this campaign) that different individuals allege—whether discharge, forced early retirement, demotion, or transfer to a dead-end job—will be relevant primarily to the computation of damages. Any conflicts of interest within the plaintiff class that result from the decisions of particular claimants to opt-in to this action are unlikely to be insurmountable. In any event, we can deal with them if and when they appear.

Marshall Field also argues that potential claimants have already been adequately informed of their substantive rights under the ADEA, and that notice of this action is therefore unnecessary. It contends that "a recent series of newspaper articles," and television shows in the Chicago area "virtually guarantee that the total mix of information is favorable to potential plaintiffs' awareness and assertion of their substantive rights under the ADEA." The two newspaper articles—one from THE CHICAGO TRIBUNE and another from THE WALL STREET JOURNAL—which Marshall Field has presented as illustrating this "recent trend" are both general in nature; neither mentions this specific action. *Cf. Frank v. Capital Cities Communications, Inc.*, 88 F.R.D. 674, 677 (S.D.N.Y.1981)(article in THE WALL STREET JOURNAL bearing "no meaningful relationship to the case at bar," was not sufficient to obviate a need for formal notice to potential claimants of the pendency of plaintiffs' action alleging violation of the ADEA). Moreover, no one knows which claimants actually saw these articles or other articles which have referred to the present lawsuit.

Marshall Field has not pointed to any article which informs other claimants that they may be eligible to join in this lawsuit. What the defendant argues for is at best a hit-or-miss form of notice. No doubt some potential claimants have learned or will learn of this action and their right to opt-in to it through the articles and television shows to which the defendant refers, or through the ancient method of grapevine communication. That some potential claimants have serendipitously learned of their rights under the ADEA and this action is no reason to depend upon informal means of communication to get this information to other members of the class.

Finally, Marshall Field attempts to distinguish *Monroe* by arguing that Judge Shadur found notice to potential claimants appropriate in that ADEA action only because the defendant in that case had sent individual letters, in which it denied wrongdoing, to each potential claimant. 90 F.R.D. at 640. The defendant argues that because of these letters, formal notice authorized by the court was the only means of providing a "neutral discussion" of the *Monroe* lawsuit. *Monroe*, however, does not hold that notice is appropriate only in such a narrow set of circumstances. Marshall Field has publicly denied any discrimination against the named plaintiffs.[5] Fur-

---

5. *Field's denies 4 retirees' charge of age bias*, THE CHICAGO TRIBUNE, October 21, 1981, § 1, at 18.

thermore, the plaintiffs' allegation that Marshall Field failed to post (or otherwise inform its employees of) information about the ADEA as required by that Act and applicable regulations[6] is uncontradicted. By both its action and its omission, the defendant has made formal notice of this action necessary for a "neutral discussion of the potential claimants' rights."

Moreover, it is already apparent that a number of other present and former employees are contemplating filing separate actions. In the interests of judicial economy and efficiency, it is desirable to minimize the number of such separate actions and to coordinate the discovery, at least on the issue of liability. Notice of this action should contribute substantially to that end.

### III.

Marshall Field argues that the notice should be circumscribed in various ways. As indicated, the plaintiffs have accepted one of the defendant's suggested limitations outright, and are willing to accept a second if a particular condition is met. The plaintiffs agree that the notice should be restricted to current and former executives of Marshall Field's Chicago Division. They also agree that the notice should go only to those employees identified as adversely affected—as opposed to those who *might* be adversely affected—through termination, demotion, transfer, or retirement, provided that the defendant identifies these employees. We find that these limitations, and the condition which the plaintiffs place upon the second one, are reasonable, and we pro-

ceed to those suggested limitations which the plaintiffs contest.

■■■■ Marshall Field argues that notice should be sent only to potential claimants who are no longer in its employ. Marshall Field also contends that only those former executives who allege that discriminatory action occurred on or after October 16, 1978, are eligible to receive notice and opt-in to this action.

We see no valid reason to limit the notice to former employees of the defendant. As indicated, the plaintiffs allege that Marshall Field embarked on a campaign to rid itself of its older executives. They allege that this campaign had different effects upon different employees; some were demoted or transferred to comparatively undesirable positions, while others were discharged or forced into early retirement. Notice will be sent to potential claimants who remain employed by Marshall Field as well as to potential claimants who are no longer in its employ.

Marshall Field next argues that only those prospective plaintiffs who have timely filed their own EEOC charges should receive notice of this action. Alternatively, it contends that notice should be limited to those potential claimants who could have timely filed an EEOC charge on the date the first charge was filed with the EEOC by any of the named plaintiffs.[7] Marshall Field predicates these arguments upon 29 U.S.C. § 626(d). That section requires a claimant to file a charge with the EEOC, and then give the EEOC sixty days in which to conciliate the claim, before he may

---

**6.** 29 U.S.C. § 627 states:

Every employer, employment agency, and labor organization shall post and keep posted in conspicuous places upon its premises a notice to be prepared or approved by the Secretary setting forth information as the Secretary deems appropriate to effectuate the purposes of this chapter.

29 C.F.R. § 1627.10 states:

Every employer, employment agency, and labor organization which has an obligation under the Age Discrimination in Employment Act of 1967 shall post and keep posted in

conspicuous places upon its premises the notice pertaining to the applicability of the Act prescribed by the Commission. Such a notice must be posted in prominent and accessible places where it can readily be observed by employees, applicants for employment and union members.

**7.** How the defendant arrived at October 16, 1978, as its cut-off date is not explained. Karl Kaiser was the first of the named plaintiffs to file a charge with the EEOC. He did so on May 5, 1981. The date which Marshall Field cites is well over 300 days before May 5, 1981.

file a civil action in the courts.[8] Section 626(d) also requires the claimant to file his EEOC charge within 180 days of the occurrence of the alleged discriminatory act. This period is extended from 180 days to 300 days where the claimant resides in a "deferral state," *i.e.*, one which has its own law prohibiting age discrimination in employment and procedures for redressing violations of it. *See* 29 U.S.C. § 633(b). Illinois, by virtue of Ill.Rev.Stat. ch. 68, § 2–102(A), is a "deferral state," and therefore, the 300 day period is applicable.

We do not decide at this time, however, whether failure to observe the various administrative procedures which precede filing an ADEA action in the courts removes the right of particular potential claimants or groups of potential claimants to opt-in to this lawsuit. Nor do we now determine whether potential claimants who did not file their own EEOC charges can "piggyback" their claims onto those of these plaintiffs by opting-in to this action.[9] *See, e.g., McCorstin v. United States Steel Corp.*, 621 F.2d 749 (5th Cir. 1980) (refusing to allow claimants who did not timely file an EEOC charge to opt-in to an ADEA suit brought by one who did timely file with the EEOC); *Bean v. Crocker National Bank*, 600 F.2d 754 (9th Cir. 1979) (allowing grievants who had complied with § 626(d) to bring a representative ADEA action on behalf of similarly situated employees who had failed to file timely EEOC charges).

■ We decide only that notice of this action to all potential claimants is appropriate, regardless of whether we may later find it necessary to bar some of them from joining in this action. We note— without deciding whether it determines the issue of which of the potential claimants can actually opt-in to this action—that Marshall Field does not contradict the plaintiffs' assertion that it failed conspicuously

to post specific notices informing its employees of their substantive and procedural rights under the ADEA, as is required by 29 U.S.C. § 627 and 29 C.F.R. § 1627.10. *See* Plaintiffs' Affidavit, ¶¶ 8–10. An employer's failure conspicuously to post notice of ADEA rights tolls the limitations periods of § 626(d). *Kephart v. Institute of Gas Technology*, 581 F.2d 1287, 1289 (7th Cir. 1978). The appropriate period then commences "when the employee either retains an attorney or acquires actual knowledge of his rights under the ADEA." *Id.* That the *Kephart* rule may necessitate factual inquiries to determine whether particular individuals may opt-in to this action does not preclude sending those individuals notice of the action.

Both the plaintiffs and Marshall Field have submitted proposals for the form and content of the notice to be sent to potential claimants in this action. We find that the plaintiffs' proposed notice is more informative, exhibits greater clarity, and is more neutral in tone than that submitted by the defendant. We therefore authorize the plaintiffs' version, with modifications consistent with this opinion and as specified in open court, as the notice to be sent to potential claimants in this action.[10]

## IV.

■ Marshall Field requests that we certify for interlocutory appeal under 28 U.S.C. § 1292(b) any decision authorizing notice to potential claimants. We do not regard the questions addressed in this opinion as appropriate for § 1292(b) certification, and we therefore decline to certify our order.

■ Section 1292(b) provides for immediate appeal of an otherwise nonappealable order which the district court and the court of appeals determine (1) involves a control-

---

**8.** Section 626(d) gives these functions to the Secretary of Labor. They were transferred to the EEOC by § 2 of 1978 Reorg. Plan. No. 1, 43 Fed.Reg. 19807, 92 Stat. 3781.

**9.** These issues are currently being briefed by the parties.

**10.** A copy of the approved, modified version of the plaintiffs' proposed notice is attached to this opinion as Appendix C.

ling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation. Certification under § 1292(b) is reserved for exceptional cases, *Seven-Up Co. v. O-So Grape Co.*, 179 F.Supp. 167 (S.D.Ill.1959), and was not intended as a means of expediting review merely because an order involves an important legal question. *Bobolakis v. Campania Panamena Maritima San Gerassimo*, 168 F.Supp. 236, 239 (S.D.N.Y.1958); see 1958 U.S.Code Cong. & Adm.News 5260–61. As the Supreme Court observed in *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474, 98 S.Ct. 2454, 2460, 57 L.Ed.2d 351 (1978), "Congress carefully confined the availability of such reviews" and the party seeking to appeal has the burden of demonstrating " 'that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.' " 437 U.S. at 475, 98 S.Ct. at 2461, *quoting Fisons Ltd. v. United States*, 458 F.2d 1241, 1248 (7th Cir. 1972).

 We do not believe that whether § 216(b) permits a court to authorize notice to potential claimants of a class action brought pursuant to that statute is a controlling question of law. The plaintiffs clearly could send notice to potential claimants without our authorization, so long as we did not expressly enjoin them from doing so. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). Thus, the question becomes not whether we can authorize notice in a § 216(b) action, but whether it is appropriate to do so in a particular case. Whether a court should participate in the shaping of the form and scope of notice is largely a matter of its discretion. We believe plaintiffs have pursued the desirable procedure in inviting our participation before sending notice rather than after. Section 1292(b) certification is not designed for "review of factual matters" or actions "grounded in the discretionary power of the district

court." *Link v. Mercedes-Benz of North America, Inc.*, 550 F.2d 860, 862–63 (3d Cir. 1977).

Nor do we believe that immediate appeal of this order would "materially advance the ultimate termination of the litigation." The defendant argues that if the Seventh Circuit finds that notice is improper, fewer individuals will likely opt-in to this action. This, the defendant maintains, will reduce the amount of discovery. However, it is impossible to know whether claimants who elect to opt-in to this action following receipt would not have done so even without notice. More importantly, the scope of discovery will not be reduced significantly if no notice is sent and, consequently, fewer claimants opt-in to this lawsuit. The allegations of the named plaintiffs that Marshall Field has conducted a campaign of age discrimination against a large group of its employees would inevitably necessitate "classwide" discovery, including identification of all individuals to whom the notice will be sent, even if no additional plaintiffs come forward. Such information is clearly relevant to their individual claims. Sooner or later they will become aware of this and other similar actions and the possibility of opting-in or starting their own actions.

## CONCLUSION

For the reasons stated above, we authorize the plaintiffs to send notice of this action to all former and current management-level employees of Marshall Field's Chicago Division who have been adversely affected by discharge, early retirement, demotion, or transfer since January 1, 1977. We also approve the proposed notice submitted by the plaintiffs—with modifications (see Appendix C). Furthermore, we direct the defendants to provide all information necessary to sending this notice in an orderly and expeditious manner. Finally, we deny the defendant's motion for certification of our order pursuant to 28 U.S.C. § 1292(b). An order consistent with all of the above will enter.

## APPENDIX A

### NOTICE OF PENDENCY OF AGE DISCRIMINATION LAWSUIT

WILL, District Judge.

TO: All persons who were employed by Marshall Field & Company at any time on or after January 1, 1977 and who are presently over 40 years of age.

RE: Age Discrimination In Employment Act (ADEA) lawsuit against Marshall Field & Company.

The purpose of this Notice is to advise you of an age discrimination lawsuit that has been filed against Marshall Field & Company and to advise you of the legal rights you have in connection with that suit.

1. *Description Of The Litigation.* Three former employees of Marshall Field & Company filed this lawsuit on October 10, 1981. The complaint alleges, in substance, that Marshall Field has engaged in a systematic course of discriminatory conduct against its older employees. This campaign is alleged to have begun in 1977 after Angelo Arena became president of Marshall Field. Plaintiffs allege that this alleged campaign included termination or demotion of older employees for fictitious reasons and forced retirement of substantial numbers of other older employees by placing or threatening to place them in lower paying or dead-end jobs. Marshall Field & Company has publicly denied all these charges and has denied that it discriminates against anyone on the basis of age.

2. *Your Right To Join This Suit As A Party Plaintiff.* If you believe that Marshall Field has discriminated against you on the basis of age in the manner plaintiffs assert in the complaint, you have the right to assert this claim against Marshall Field as a party plaintiff in the present lawsuit. To do that you must file with the Clerk of the Court a written Notice of Consent to be made a party plaintiff.

It is entirely your own decision whether or not to join this suit. You are not required to join in this case by filing your consent or to take any action unless you want to. It is completely voluntary.

3. *Your Options As To Legal Representation If You Join The Suit.* If you wish to join the suit as a party plaintiff, it is entirely your own decision as to whether you prefer to be represented by the present plaintiffs' attorneys or by an attorney of your own choosing. The attorneys for the present plaintiffs are:

Charles Barnhill, Jr.

George F. Galland, Jr.

Davis, Miner, Barnhill & Galland, Chtd.

14 West Erie Street

Chicago, Illinois 60610

(312) 751–1170

If you wish them to represent you, you should write them directly.

4. *How To File The Notice Of Consent If You Choose To Join This Suit.* Attached to this Notice is a form to be used if you wish to be a party plaintiff in this suit. That form must be filled out, signed, and mailed to the Clerk of the Court *postmarked on or before* _____, 1982. The form should be mailed to the following address:

Clerk of the United States District Court

P.O. Box _____

Chicago, Illinois _____

Unless the Clerk receives a Notice of Consent form postmarked on or before _____, 1982, you may not be allowed to join in this case.

5. *The Legal Effect Of Joining Or Not Joining In This Case.* If you do not file a consent form and join in this case, you will not receive any damages or other relief if the plaintiffs prevail here. Any such relief would be obtainable by you only if you began timely independent legal proceedings as prescribed by the Age Discrimination In Employment Act.

If, however, you decide to join the case by filing your consent, you will be bound by the judgment of the Court on all issues in the case.

APPENDIX A—Continued

6. *No Opinion Expressed As To The Merits Of The Case.* This notice is for the sole purpose of determining the identity of those persons who wish to be involved in this case. Although the Court has authorized the sending of this notice, there is no assurance at this time that the Court will find any plaintiff's contention meritorious or grant any relief.

7. *Protection Against Retaliation.* The Age Discrimination In Employment Act prohibits anyone from discriminating or retaliating against you if you choose to take part in this case.

H. STUART CUNNINGHAM
Clerk

NOTICE OF CONSENT TO JOIN
AS A PARTY PLAINTIFF

I hereby give my consent to be a party plaintiff in this case.

Name _____
Address _____
_____
Telephone Number _____
(Area code) (Number)
Date of Birth _____

Signature _____
Date _____

APPENDIX B

NOTICE OF PENDENCY OF AGE
DISCRIMINATION LAWSUIT

TO: Former Executives of Marshall Field & Company's Chicago Division who claim they were terminated or involuntarily retired by Marshall Field & Company because of their age (40 to 70) since October 16, 1978.

RE: Age Discrimination in Employment Act (ADEA) lawsuit against Marshall Field & Company.

The purpose of this Notice is to advise you of an age discrimination lawsuit that has been filed against Marshall Field & Company ("Marshall Field's") and to advise you of the time limits for filing written consents to join this lawsuit.

1. *Description of the Litigation.* Four former employees of Marshall Field's filed this lawsuit on October 16, 1981. They allege that Marshall Field's has engaged in a pattern and practice of terminating or involuntarily retiring employees because of their age. Marshall Field's has publicly denied all these charges and has denied that it discriminates against anyone on the basis of age.

2. *Your Right to Join this Suit.* If you were formerly employed as an executive of Marshall Field's Chicago Division, and if you believe that Marshall Field's has terminated or involuntarily retired you on the basis of age (40 to 70), you may have the right to assert this claim against Marshall Field's in the present lawsuit. To do that, you must file with the Clerk of the Court a written consent to join. The consent must be under oath and must allege that you believe you were terminated or involuntarily retired on the basis of age.

It is entirely your own decision whether or not to join this suit. You are not required to join in this case by filing your consent, or to take any action unless you want to. It is completely voluntary.

3. *Hearing on Consent to Join.* If you file a consent to join, the Court will hold a hearing to determine if you have met the legal requirements necessary to join the lawsuit.

At such a hearing the Court will determine whether the claims you assert are timely and whether your claims are sufficiently related to the plaintiffs' claims to entitle you to join in this action.

4. *Your Options as to Legal Representation if You Join the Suit.* If you wish to join the suit, it is entirely your own decision as to whether you prefer to be represented by the present plaintiffs' attorneys or by an attorney of your own choosing.

5. *Time Limits for Filing Consent to Join.* To be valid, a written consent to join must be filed with the Clerk of the Court no later than _____, 1982.

6. *The Legal Effect of Joining or Not Joining in this Case.* If you do not file a consent to join in this case, you will not be

APPENDIX B—Continued

bound by any judgment that is entered. If, however, you decide to join in the case by filing your consent, you will be bound by the judgment of the Court on all issues in the case.

7. *No Opinion Expressed as to the Merits of the Case.* This Notice is for the sole purpose of determining the identity of those persons who wish to be involved in this case. Although the Court has authorized the sending of this Notice, no opinion is expressed as to the merits of the case. In this connection, the Court may find you are entitled to some kind of relief, or may find you are entitled to nothing.

8. *Protection Against Retaliation.* The Age Discrimination in Employment Act prohibits anyone from discriminating or retaliating against you if you choose to take part in this case.

DATED: _____.

H. Stuart Cunningham,
Clerk

## APPENDIX C

### NOTICE OF PENDENCY OF AGE DISCRIMINATION LAWSUIT

TO: All persons who were employed by Marshall Field & Company at any time on or after January 1, 1977 and who are at present over 40 years of age.

RE: Age Discrimination In Employment Act (ADEA) lawsuit against Marshall Field & Company.

The purpose of this Notice is to advise you of an age discrimination lawsuit that has been filed against Marshall Field & Company and to advise you of the legal rights you have in connection with that suit.

1. *Description Of The Litigation.* Three former employees of Marshall Field & Company filed this lawsuit on October 10, 1981. The complaint alleges, in substance, that Marshall Field has engaged in a systematic course of discriminatory conduct against its older employees. This campaign is alleged to have begun in 1977 after Angelo Arena became president of Marshall Field. Plaintiffs allege that this alleged campaign included termination or demotion of older employees for fictitious reasons and forced retirement of substantial numbers of other older employees by placing or threatening to place them in lower-paying or dead-end jobs. Marshall Field & Company has publicly denied all these charges and has denied that it discriminates against anyone on the basis of age.

2. *Your Right To Join This Suit As A Party Plaintiff.* If you believe that Marshall Field has discriminated against you on the basis of age in the manner plaintiffs assert in the complaint, you have the right to assert this claim against Marshall Field as a party plaintiff in the present lawsuit. To do that you must file with the Clerk of the Court a written Notice of Consent to be made a party plaintiff.

It is entirely your own decision whether or not to join this suit. You are not required to join in this case by filing your consent or to take any action unless you want to. It is completely voluntary.

3. *Your Options As To Legal Representation If You Join The Suit.* If you wish to join the suit as a party plaintiff, it is entirely your own decision as to whether you prefer to be represented by the present plaintiffs' attorneys or by an attorney of your own choosing. The attorneys for the present plaintiffs are:

Charles Barnhill, Jr.

George F. Galland, Jr.

Davis, Miner, Barnhill & Galland, Chtd.

14 West Erie Street

Chicago, Illinois 60610

(312) 751–1170

If you have any questions with respect to the case, you may contact them.

4. *How To File The Notice Of Consent If You Choose To Join This Suit.* Attached to this Notice is a form to be used if you wish to be a party plaintiff in this suit. That form must be filled out, signed, and mailed to the Clerk of the Court *post-*

*marked on or before* <u>March 1.</u>, 1982. The form should be mailed to the following address:

Clerk of the United States
 District Court
P.O. Box <u>10793</u>
Chicago, Illinois <u>60610</u>

Unless the Clerk receives a Notice of Consent form postmarked on or before <u>March 1</u>, 1982, you may not be allowed to join in this case.

5. *The Legal Effect Of Joining Or Not Joining In This Case.* If you do not file a consent form and join in this case, you will not receive any damages or other relief if the plaintiffs prevail here. Any such relief would be obtainable by you only if you began timely independent legal proceedings as prescribed by the Age Discrimination In Employment Act.

If, however, you decide to join the case by filing your consent, you will be bound by the judgment of the Court on all issues in the case.

6. *No Opinion Expressed As To The Merits Of The Case.* This notice is for the sole purpose of determining the identity of those persons who wish to be involved in this case. Although the Court has authorized the sending of this notice, there is no assurance at this time that the Court will find any plaintiff's contention meritorious or grant any relief.

7. *Protection Against Retaliation.* The Age Discrimination In Employment Act prohibits anyone from discriminating or retaliating against you if you choose to take part in this case.

H. STUART CUNNINGHAM
Clerk

NOTICE OF CONSENT TO JOIN
AS A PARTY PLAINTIFF

I hereby give my consent to be a party plaintiff in this case.

Name _____
Address _____
 _____

Telephone Number _____
 (Area code) (Number)
Date of Birth _____

Signature _____
Date _____